OPINION OF THE COURT
Judith J. Gische, J.
This motion raises the novel issue of the impact, if any, an adoptive subsidy has on determining a parent’s child support obligation. Defendant seeks temporary child support for the parties’ adopted special needs child who, the parties concede, remains in defendant’s custody. Plaintiff claims that an adoptive subsidy paid by the Department of Social Services on behalf of the child should reduce the amount of child support she should be required to pay.
Background
The parties were married in 1972. Plaintiff owns an automobile driving school and defendant is a high school teacher. In 1994, the parties adopted J.N.E. (date of birth Jan. 20, 1986), a handicapped child who had previously been in foster care.
Currently, defendant has de facto custody of J.N.E. It is undisputed that plaintiff removed herself from the marital home, leaving the child and defendant behind. Plaintiff claims she fled because the child menaced and threatened her repeatedly. Defendant claims plaintiff had the child institutionalized on two separate occasions in order to rid herself of child-rearing *665 responsibilities. Regardless of the reason for the separation, defendant, as the de facto custodial parent, is entitled to interim support payments on the child’s behalf. (Domestic Relations Law § 240 [1]; De Arakie v De Arakie, 169 AD2d 660 [1st Dept 1991].)
Interim Child Support
At the time of the adoption, the New York State Department of Social Services entered into a contract with the parties whereby the local Department of Social Services (DSS) agreed to provide “support and care to the proposed adoptive parents on behalf of said child” pursuant to article 6, title 9 of the Social Services Law. The adoptive subsidy is a quid pro quo to the adoptive parents on behalf of a “handicapped or hard to place” child. (Social Services Law § 453 [1] [a].) The financial circumstances of the parents are considered only to determine the amount of the payments to be made.
J.N.E., diagnosed as hyperactive, having multiple eye problems, esotropia (cross-eyed) and other afflictions, is considered handicapped, as that term is defined in the Social Services Law. (Social Services Law § 451 [2].) The subsidy, currently $914.42 a month, is payable by DSS until the child reaches age 21. It is subject to increases: (1) as the District Board rate increases, (2) when the child grows older, (3) upon the family’s request, and (4) at the Commissioner’s discretion. It is undisputed that defendant currently receives the entire subsidy on the child’s behalf.
The issue presented is whether the plaintiff should be credited with any portion of the subsidy, thereby reducing her child support obligation. She argues that the subsidy should be treated as income to the parents. Since defendant is keeping the entire amount, plaintiff argues, her support obligation to the child is being met or should be reduced by the subsidy, because the subsidy is intended to cover all the child’s expenses, including clothing.
In Matter of Graby v Graby (87 NY2d 605, 611 [1996]), the Court of Appeals ruled that Social Security payments received by the child of a disabled, noncustodial parent cannot be included as income to that parent and credited against her support obligation. Rather such payments are treated as resources of the child, to be considered in determining whether the parent’s support obligation is unjust or inappropriate. (Supra, at 609.) The Court reasoned that the Child Support Standards Act (CSSA) sets forth a formula for calculating sup *666 port based on parental income and that the goal of the statute is to establish support awards within the parent’s means.
Although here, unlike Graby (supra), the adoptive subsidy is paid to the parents, and not the child, the reasoning of Graby still applies. DSS pays this subsidy for the care and maintenance of the child. J.N.E. is deemed to be a recipient of Aid to Families with Dependent Children. (Social Services Law § 453 [1] [b].) The fact that the actual check may be made payable to a parent does not change its character as a resource of the child and make it income to the parent.
The argument at bar, that the adoptive subsidy is a child’s resource, is even stronger than the argument adopted by the Court of Appeals with respect to Social Security benefits. In Graby (supra), the Court recognized that the Social Security benefits being paid to the child were intended to replace a disabled parent’s decreased earning potential. Here, the adoptive subsidy is a benefit for the child, and it is not a replacement for lost parental income. The Court in Graby noted that “benefits received by children under certain government welfare programs should not be considered income to the parent for purposes of calculating a parent’s means”. (Supra, at 611.) Specifically, a parent’s duty to support a child is not abrogated by a child’s receipt of public assistance. (Matter of Commissioner of Social Servs. [Wandel] v Segarra, 78 NY2d 220 [1991].)
Consistent with Graby (supra), the court must first calculate child support in accordance with CSSA guidelines and then determine whether the award is unjust or inappropriate by considering the 10 statutory factors contained in the guidelines. (Domestic Relations Law § 240 [1-b] [f].)
Although neither party supplies the court with independent proof of their income, such as an income tax form or paystub, defendant makes certain representations about their incomes to which plaintiff does not object. For purposes of this motion, gross combined parental income is $86,440.20, subject to applicable deductions under the CSSA. (Domestic Relations Law § 240 [1-b] [b] [5].) Plaintiff earns $55,780.20 a year whereas defendant earns $30,600. Plaintiff has not supplied a statement of net worth.
Interim child support is, therefore, calculated as follows:
Combined parental income $ 86,440
Less FICA/Medicare and local taxes $ 5,159
*667 Income upon which to calculate support $ 81,281
17% of income on which to calculate support $ 13,818
Combined weekly support obligation $ 266
Mother’s proportionate share — 65% $ 173

Mother’s weekly support obligation $ 173

The Child’s Resources and Income Over the “Cap”
The court now considers whether this award is unjust or inappropriate. Also, the court evaluates plaintiffs argument that support should not be calculated on income in excess of $80,000, the so-called “cap”. With respect to income over $80,000, the court has the option of either applying CSSA guidelines, or the 10 factors set forth in Domestic Relations Law § 240 (1-b) (f) or a combination of both. The court may also choose to entirely disregard the income over $80,000 if to allocate it would be “unjust or inappropriate”. (Domestic Relations Law § 240 [1-b] [f].) At bar, the parties exceed the cap by only $1,281. Disregarding this sum would result in a decreased support obligation by plaintiff of less than $3 a week. Given the negligible amount, the court sees no reason for any adjustment or why the CSSA guidelines should not be applied to these sums.
The more important issue is whether the court should reduce the award because of the child’s own resources. Domestic Relations Law § 240 (1-b) (f) provides a list of 10 factors that the court should consider when deviating from CSSA guidelines. Besides the child’s own resources, the court may, among other things, take into account the physical and emotional health of the child and his special needs. J.N.E. has multiple vision problems and has been diagnosed with hyperactivity. It is undisputed that the child has special needs and he is labor intensive. Within the past 12 months the child has been twice institutionalized.
The adoption subsidy is being paid by DSS, even though the parents are not indigent. DSS employs a three-tier approach to such payments: “basic”, “special” and “exceptional”. The subsidy herein is set at the second tier, or “special” level, based upon the disabilities of the child. DSS recognizes that a handicapped child who is placed for adoption imposes an increased financial commitment on the parents because of his disabilities. Had the parties not separated, the child would have continued to enjoy the benefits of both parents’ income and the subsidy. The court sees no reason why the child’s re *668 sources should be jeopardized so as to lighten the noncustodial parent’s obligation. Moreover, the court does not find that the child’s resources are such that a downward adjustment of the noncustodial parent’s support obligation is mandated. Therefore, the interim support award as it stands is not “unjust or inappropriate”.
Plaintiff shall therefore pay directly to defendant interim child support of $173 a week during the pendency of this action. The support award is made retroactive to the original return date of defendant’s motion. (See, Domestic Relations Law § 236 [B] [7]; Dooley v Dooley, 128 AD2d 669 [2d Dept 1987]; Weintraub v Weintraub, 99 AJ)2d 405 [1st Dept 1984].) Retroactive sums due by reason of this award shall be paid at the rate of $20 per week, in addition to the sums awarded, until all arrears have been satisfied. Defendant may take credit for sums voluntarily paid for maintenance and child support paid after the making of this motion and prior to the date of this decision for which she has canceled checks or other similar proof of payment. (See, Peltz v Peltz, 56 AD2d 519 [1st Dept 1977].) The first support payment hereunder shall be made within 15 days after service of a copy of this order with notice of entry and then each week thereafter.
Reimbursement of Expenses
Defendant seeks reimbursement of certain expenses he incurred on the child’s behalf after the separation in addition to other expenses. Plaintiff argues that the expenses claimed are nothing more than an attempt by defendant to receive maintenance on his own behalf. In accordance with the CSSA, parents are responsible for their pro rata share of medical expenses and the court may order a noncustodial parent to pay for after school and other extra-curricular expenses. (Domestic Relations Law § 240 [1-b] [c] [4], [5], [7].) The motion is, therefore, granted as follows: defendant is entitled to reimbursement by plaintiff for her proportionate share (e.g., 65%) of the medical expenses totaling $138; after-school care totaling $704; music lessons totaling $338.21; clothing/school supplies totaling $648.21 and athletic equipment totaling $85.37. Such sums are to be paid in full no later than April 30, 1999; these payments are in addition to retroactive arrears and any other award by virtue of this order.
The motion for reimbursement of certain moving expenses, re-upholstering of a sofa, garbage tickets, phone bill and dump fee is denied at this time. Defendant can raise these expenses and seek an offset at trial.
*669 Interest on Escrow Account
The proceeds of the sale of the marital home are in an IOLA account. Defendant asks that the funds be moved to an interest-bearing account. Plaintiff gives no reason why the funds should not be so moved. The motion is granted. Plaintiff is directed to take all steps necessary to ensure that the proceeds are moved into an interest-bearing account. Additionally, plaintiff is to provide written confirmation of the transfer within 15 days of the date of the order.
To the extent that defendant seeks an award equal to half of the interest the money would have earned had it been invested at the rate of 5.5% the motion is denied. Such action would be tantamount to predivorce equitable distribution. Defendant may raise this issue at trial.
Attorney’s Fees
Although plaintiff opposes an award of interim attorney’s fees to defendant, the court could not locate any prayer for such relief in his papers. To the extent that such relief is sought it is denied at this time for failure to include the attorney’s retainer statement. (22 NYCRR 202.16.)
Conclusion
Defendant’s motion is decided in accordance with the foregoing.