OPINION OF THE COURT
Joel B. Gewanter, J.
*872 This postjudgment matrimonial matter was referred to the undersigned by order of the Honorable Zelda Jonas dated September 29, 1999. A hearing was held, without jury, on November 22 and 23, then completed on December 1, 1999. The court notes that the parties’ designations as plaintiff and defendant on all papers herein were incorrectly indicated. The proper designations, as per the original divorce action, have been properly listed in the above caption.
Defendant father moves for a declaratory judgment which would “clarify” (he actually seeks to terminate) his obligations to provide child support and/or medical insurance coverage. Plaintiff mother opposes and, in addition, cross-moves seeking an order: (a) directing the defendant to supply proof of medical insurance coverage; (b) to establish arrears and award judgment thereon; and (c) for counsel fees.
The child of the marriage in this case (Kristine) is a severely handicapped young lady, now 24 years of age. At the time of the parties’ divorce, Kristine was about seven years of age. These, parties had separated and entered into an agreement on February 5, 1979, which is the controlling document, at which time Kristine was only four years of age.
The arguments presented herein by the defendant father are, in some respects, quite unique and appear to raise one or more issues of first impression. In substance, defendant takes the position that his child is eligible for and is receiving Medicaid benefits as a result of her physical and mental problems. This fact is conceded and, in fact, Kristine was notified in early 1997 that she was to receive such Medicaid benefits effective December 1, 1996. As a result, the father contends that: (a) Kristine should see only doctors who participate and/or are approved by Medicaid, so that no private or supplemental medical coverage would be required; and (b) Kristine should be required to move into a residential facility (group home) or is eligible to do so, which defendant claims would result in all of her living expenses being paid for by Medicaid and would, as a result, warrant a termination of the father’s child support obligations.
These questions clearly raise what this court sees as significant public policy issues. Defendant’s counsel argues that if this court were to agree and grant the relief suggested that “no one will be required to pay” for these services. She fails to recognize that the proverbial “we” — the public — would be paying. Just as significant, there are issues of “choice” involved, in two respects: first, should this court require, as a condition with re *873 spect to child support, that a parent and/or handicapped young woman (or child) terminate a home residence and diminish a close, caring and loving relationship in exchange for that of a more institutional setting? Second, should this court require a mother and/or her handicapped daughter to use doctors or medical practitioners who may not be familiar with such patient and her unique medical problems, for the purpose of a financial savings to the noncustodial father?
Initially, an understanding of Kristine’s condition is necessary. Based upon the mother’s affidavit herein, her testimony at the hearing, a detailed psychological report with testing results, and testimony of the BOCES supervisor in charge of that agency’s “supportive employment program”, it appears that Kristine’s condition is rather extreme. Kristine’s I.Q. testing results are: full scale — 63; verbal — 67; performance — 61. She is described as having the mental level of a 10-year-old child. Her reading comprehension is at grade level 3.4, and her math functioning is at grade level 1.7. When the court made an inquiry of this young lady as to her working hours, she could compute (rather slowly) that her working from 8:00 a.m. to noon was four hours per day; however, knowing that she worked three days a week, she was unable to multiply 3x4=12 as to the hours per week. In fact, defendant’s counsel, during such questions, stated aloud (quite inappropriately under the circumstances) that defendant would concede or stipulate the answer is 12. Even after such “coaching,” Kristine could not compute the answer. She is described as having “consistently scored in the intellectually deficient range.”
In addition, Kristine is described in said psychiatric evaluation as having been “born with several physical malformations including severe cleft palate and missing fingers.” She has undergone many surgical procedures. She has hearing problems; her nose is deformed and flattened; her speech is difficult to understand. She has only three fingers on each hand, severely limiting her manual dexterity. Kristine’s physical development has been unusual as well. She has not developed breasts nor begun a menstrual cycle. Although the “parts” are present, it appears their development has never been triggered. She requires periodic surgical procedures to enable her to hear and a “claw foot” problem has resulted in the absence of fatty tissue on the bottoms of her feet, affecting her mobility.
Despite all of these difficulties, Kristine “graduated” in 1996 from a special program at the Rosemary Kennedy BOCES *874 Center in Wantagh, and has been placed in several part-time jobs over the last few years. All such employment is part time because, in addition to her physical problems, she has a continuing “fatigue” problem with short “attention span,” and she works from 12 to a maximum of 20 hours per week, all for minimal wage and with no benefits available. Clearly, she is neither physically nor mentally able to obtain employment other than such menial part-time jobs. As confirmed by the said BOCES supervisor, Renee Trachtenberg, Kristine’s work is aimed at her self-worth and self-esteem, not at earning a living.
Defendant father argues that his obligations for child support and/or. to supply medical insurance should be terminated, relying upon Gray v Pashkow (79 NY2d 930) and Genther v Genther (180 AD2d 662). The Court of Appeals has held that cases involving child support after age 21 are governed by ordinary contractual principles (citing Matter of Meccico v Meccico, 76 NY2d 822) and that “ ‘while * * * parent [s] may by agreement obligate [themselves] to pay child support for a child over the age of 21 * * * only “an express agreement in unmistakable terms” will cause such contractual liability to attach (Hoffman v Hoffman, 122 AD2d 583, 584, lv dismissed 69 NY2d 706).’ ” (Gray v Pashkow, supra, at 932.)
The contractual provision at issue here is paragraph numbered “tenth” of the agreement dated February 5, 1979, which was incorporated by reference, but not merged into the judgment of divorce entered April 7, 1982. It provides for the father to be responsible for medical and dental expenses as well as child support. As to such medicals, it contains a specific provision that: “In the case of kristine marie, it is further agreed that the Husband will continue to be responsible to maintain such coverage, so long as she remains unable to provide for same from her personal earnings” (emphasis supplied). A further provision in that same paragraph requires a payment of $62.50 per week “for the support of kristine ma-rie until she reaches the age of 21 years, or becomes capable of providing for herself regardless of age” (emphasis supplied). At first blush, this language might seem to imply a termination at age 21; however, the above language is immediately followed by: “The particular provisions for kristine marie are entered into with the Husband’s full acceptance of the probable necessity of providing for kristine marie well past the age of 21 years” (emphasis supplied).
In this court’s opinion, the foregoing provisions of the parties’ separation agreement present a clear and express agreement, *875 in unmistakable terms, to provide for this child beyond age 21. Further, the court notes that Kristine is currently 24 years of age and more than two years have elapsed since she was approved as eligible for Medicaid. The father’s payments made after the age of 21 also tend to confirm his recognition of that obligation.
As hereinabove stated, this court has not been able to find any precedent directly on point as to the issues raised in this case. The court does note, however, that Supreme Court, Bronx County, recently dealt with the issue of a subsidy or benefit payable to a child through the Department of Social Services, and held such funds to be a resource of the child and not parental income. As a result, that court declined to reduce the noncustodial spouse’s child support obligation (see, A. E. v J. I. E., 179 Misc 2d 663 [1999]). In addition, to allow public assistance to replace the child support obligations, be they statutory or contractual, would only act as a disincentive for affluent noncustodial parents to make voluntary child support payments. (See, Matter of Commissioner of Social Servs. [Wandel] v Segarra, 78 NY2d 220.) In any event, the contractual triggering event which would relieve the defendant father of his obligations with regard to Kristine is her ability to provide for herself from her personal earnings. If the parties intended that all income from whatever source, including public assistance, was to be considered, they could have so provided.
With regard to the aforementioned suggestion of a “group home” placement, defendant called Ms. Deborah Kolonick as a witness. She is a social worker employed by a nonprofit agency as their supervisor of residential social work services. Ms. Kolonick is part of a team of professionals dealing with a number of handicapped individuals and she personally assists them in applying for benefits. She confirmed that individuals with handicapping conditions and having an I.Q. of under 70 are regularly placed in group home facilities. Also, she testified that in most areas of expertise, doctors who participate in Medicaid are available. She did acknowledge that the “client” (patient) has a right or “say” as to who will treat them and has the right to use any doctor. When asked by counsel for the defendant whether any such clients or patients are “suffering” by being placed in a group home facility, she responded that where the patient and family expressed a preference that the child remain at the family home, such a preference would be honored and the necessary services would be provided with the child remaining at home.
*876 At the continued trial on December 1, 1999, defendant called a witness for the purpose of establishing his argument that, in effect, all medical needs for Kristine would be supplied without the need for supplemental private insurance. This witness, a registered nurse having 24 years’ experience with the New York State Office for the Mentally Retarded, was both credible and candid. While she believed a handicapped person’s medical needs would be fully paid for, she did not feel herself to be qualified to render an opinion as to the preference, if any, that might be given to keeping a personal relationship with a doctor who has treated the patient for some time.
In rebuttal, plaintiff called a witness who is a social worker experienced in assisting the medical needs of handicapped persons in both private home and group home situations. When cross-examined by defendant’s counsel, the witness stated that there are limitations on Medicaid coverages and that specialists are often not available. More significantly, when asked about a Medicare HMO plan, VITRA, she advised that VITRA has different policies and different coverages for Medicaid patients, compared to non-Medicaid patients.
In the case at bar, there is clearly a strong and loving relationship between the mother and daughter and the mother is vehemently opposed to any suggestion of removing Kristine from their home. As a matter of public policy, this court believes such relationship should be encouraged and fostered, particularly absent some financial hardship. In that regard, defendant did not offer any evidence whatsoever as to his financial condition, much less any “hardship.” When questioned by the court as to the cost of maintaining insurance for Kristine, Mr. Boland stated that he was employed by United States Customs and that his own medical coverage was provided by his employment, but that it cost him an extra $1,200 per year for Kristine’s coverage. In the absence of any financial difficulty, this court sees no basis upon which to terminate defendant’s contractual obligation, or to place the mother and child in a position where they would not be able to utilize the medical practitioners of their choice, especially those who would be personally familiar with Kristine’s unusual medical history and concerns.
Similarly, in the absence of any financial hardship, this court does not see any basis, either in law or in public policy, to create a further burden upon the public than already exists, by replacing the father’s contractual obligation with extended public benefits. Counsel’s argument that “nobody would have *877 to pay” is inappropriate and not worthy of consideration. Accordingly, the defendant’s application is denied in all respects.
Turning to plaintiffs cross motion herein, the mother seeks an order directing defendant to continue his medical coverage for Kristine. In view of this court’s decision not to terminate his obligation, it necessarily follows that, without any specific order, the defendant is so obligated to continue to provide such coverage.
As to child support, the parties had entered into a stipulation while this matter was pending, pursuant to which child support payments which were stopped on January 7, 1999 were reinstated on February 22, 1999, without prejudice. Accordingly, there is currently due and owing eight weeks of child support which totals $952 and the defendant is hereby ordered to pay to the plaintiff said sum of $952 on or before January 17, 2000; upon his failure to make such payments, plaintiff shall have judgment in said amount plus interest and statutory costs.
As to counsel fees, such an award is authorized in Domestic Relations Law § 237 (b) and, in the instant case, is appropriate for the defense of this action and prosecution of plaintiffs cross motion. This court has reviewed counsel’s submission as to her experience and qualifications, as well as the time she has expended in preparation of motion papers, pretrial and trial of this hearing. This court has also reviewed the affirmation in opposition submitted by the defendant’s attorney.
Accordingly, the court awards counsel fees and disbursements in the total sum of $4,000; and it is hereby ordered that the defendant, Andrew John Boland, pay to Megan E. Wooley, Esq., of the firm of Preston, Fardes & Wooley, L. L. P., the sum of $4,000 to be paid on or before January 17, 2000.