54 P.3d 371

Clayton R. HAMBLEN, Petitioner–
Appellant,

v.

Julie M. HAMBLEN, Respondent–
Appellee.

No. 1 CA–CV 01–0568.

Court of Appeals of Arizona,
Division 1, Department C.

Sept. 26, 2002.

Gerald F. Moore, Attorney at Law, Phoenix, Attorney for Petitioner–Appellant.

Robert F. Harrian and Donna G. Heller Bellah, Harrian and Pearson, P.L.C, Glendale, Attorneys for Respondent–Appellee.

## OPINION

EHRLICH, Judge.

¶ 1 Clayton R. Hamblen appeals the trial court's order calculating child-support, particularly that portion involving Title IV–E Adoption Assistance Agreements and subsidies. For reasons that follow, we affirm in part, and reverse and remand in part.

### *FACTS AND PROCEDURAL HISTORY*

¶ 2 Hamblen and Julie M. Hamblen ("Mrs. Hamblen") were married in 1989. On June 9, 1997, they and the Arizona Department of Economic Security ("ADES") entered a Title IV–E Adoption Assistance Agreement. Ariz. Rev.Stat. ("A.R.S.") § 8–144 (1989). The Hamblens adopted a child, and ADES agreed to pay a monthly adoption subsidy. Two years later, the Hamblens adopted four more children, and executed similar Title IV–E agreements in which ADES agreed to pay monthly adoption subsidies for each of the children. These subsidies were available because the children had been classified "AM 3," meaning that each child had "special needs." *See* A.R.S. § 8–141(A)(14).

¶ 3 Two weeks after the adoption of the four children, Hamblen petitioned for the dissolution of his marriage. Eventually, he and Mrs. Hamblen entered a Stipulation as to Division of Assets, Liabilities, Child Custody and Support ("Stipulation"). Mrs. Hamblen remained the primary caretaker of the children, and Hamblen assigned his interest in the adoption subsidies to Mrs. Hamblen.

¶ 4 The Hamblens later entered a Joint Custody Agreement and Parenting Plan ("Custody Agreement"). Hamblen once again agreed "freely and voluntarily" to assign his interest in the adoption subsidies to Mrs. Hamblen "for the benefit of [the] children." However, in a later Joint Pretrial Statement, the portions of the Stipulation and Custody Agreement that dealt with child support, including the adoption subsidies, were deleted because they had become contested issues. Hamblen maintained that, because the subsidies exceeded the amount of support required by the Arizona Child Support Guidelines ("Guidelines"), they should

be awarded to Mrs. Hamblen in lieu of any child support from him.

¶ 5 The trial court concluded that the adoption subsidies would be treated as income to the children. Explaining that the income of a child does not relieve a parent of his support obligation,[1] the court elaborated that the subsidies were to meet the special needs of the children and to supplement Hamblen's support obligation. As a result, the amount of money that Mrs. Hamblen received as subsidies for four of the children was excluded from the child-support calculation,[2] and Hamblen was ordered to pay a 95% proportionate share of the resulting child-support obligation. After numerous additional adjustments, Hamblen was ordered to pay $1486.76 in child support. He appealed.

### DISCUSSION

#### A. Adoption Subsidies

¶ 6 As a general proposition, we review the trial court's award of child support for an abuse of the court's discretion. *Kelsey v. Kelsey*, 186 Ariz. 49, 53, 918 P.2d 1067, 1071 (App.1996). However, Hamblen's particular contention raises a question of law, namely whether an adoption subsidy, paid as part of an agreement pursuant to A.R.S. § 8–144, should be considered a credit against a spouse's child-support obligation, and thus this issue is reviewed *de novo*. *In re Marriage of Pownall*, 197 Ariz. 577, 580 ¶ 7, 5 P.3d 911, 914 (App.2000).

¶ 7 The adoption subsidies in question are provided as part of a joint federal and state plan to promote and subsidize the adoption of children with special needs. The federal plan, codified at 42 United States Code § 670 *et seq.* (1994 and Supp.1999), was passed in 1980 as part of the Adoption Assistance and Child Welfare Act. Essentially, the program provides federal reimbursements to states that pay benefits to parents who adopt children with special needs. 2 JOAN H. HOLLINGER, ADOPTION LAW AND PRACTICE § 9.02, at 9–6 (Supp.1999). Every state now has an adoption assistance program, and, because the statutory provisions governing the federal program are in Title IV–E of the Social Security Act, the benefits are typically called "IV–E benefits." *Id.*

¶ 8 Arizona's adoption-assistance program is governed by A.R.S. § 8–141 *et seq.* Section 8–141(A)(14) defines "special needs" as including a physical, mental or developmental disability; an emotional disturbance; a high risk of physical or mental disease; a high risk of a developmental disability, and a high risk of a severe emotional disturbance if removed from foster parents or any combination of these factors.

¶ 9 Section 8–144, A.R.S., dictates how a prospective adoptive family participates in the subsidy program, and governs the amount and duration of the subsidy. According to subsection A:

> The family entering into subsidized adoption and [ADES] shall sign a subsidy agreement .... Adoption subsidies may commence with the adoption placement or after the adoption decree, and will vary with the needs due to the special circumstances of the adopted child as well as the availability of other resources.

Subsection B states in part:

> The adoption subsidy may continue through the age of twenty-one if the individual is enrolled in and regularly attending school unless the person has received a high school diploma or certificate of equivalency. The subsidy may be for special services only or for money payments, and either for a limited period or for a long term, or for any combination thereof. The amount of the subsidy shall not exceed the payments allowable under foster family care.

---

1. Pursuant to the Guidelines in effect at the time of the hearing, the income of a child was governed by section 23: "Income earned or money received by a child from sources other than child support shall not relieve a parent of the support obligation established by these guidelines." In the new Guidelines, effective April 20, 2001, the relevant section has been designated section 24.

2. By this time, the Hamblens no longer were receiving a subsidy for a child who had been removed from their custody as a result of proceedings in juvenile court.

¶ 10 The Hamblens adopted five children with special needs. By virtue of Arizona's adoption-assistance program, they were paid a subsidy of $671 per month for each child.

¶ 11 Hamblen argues that the trial court erred in ruling that the subsidies constituted money received by the children. Rather, he contends, the money is a government subsidy to support the children and, as such, one half should be credited against his child-support obligation.

¶ 12 Hamblen's premise is that an adoption subsidy is the result of negotiations, therefore a contract between the parents and ADES. The bargain, he maintains, is clear: ADES provides the parents with funds to adopt a special-needs child. As such, he continues, the funds belong to the parents and, with the dissolution of marriage, become the separate property of each party.

¶ 13 We disagree with the postulate of his argument. The Title IV–E agreement does not make the funds the parents' property. Rather, the agreement is simply the means by which the money is funneled to the children to address their special needs. As the United States Department of Health and Human Services explicitly states in its Child Welfare Policy Manual:

> Foster and adoptive parents are not recipients of Federal foster care and adoption assistance payments; rather, foster care and adoption assistance payments are made on the child's behalf to meet his or her needs.

U.S. DEP'T HEALTH AND HUMAN SERVICES, *Child Welfare Policy Manual*, § 8.4B, *at* http: //cb1.acf.dhhs.gov/programs/cb/cwpm/policy.cfm?id=8 (2001).

¶ 14 Other courts have considered this question and determined as we do that the subsidy belongs to the child. In *County of Ramsey v. Wilson*, 526 N.W.2d 384 (Minn.Ct.

App.1995), a man adopted a child and received a subsidy. A few years later, the child was placed in a court-ordered out-of-home placement for several months. The county sued the father for reimbursement for the cost of the care of the child while the child was in the out-of-home placement; specifically it sought recovery of the adoption subsidy it had paid. The father argued that the subsidy was income attributable to him and, as such, that the county was precluded from seeking reimbursement from him. The court disagreed, stating that, because the subsidy was for the child, the subsidy was a "resource attributable to the child." *Id.* at 387.

¶ 15 In *A.E. v. J.I.E.*, 179 Misc.2d 663, 686 N.Y.S.2d 613 (1999), the Supreme Court of New York considered this issue in a context similar to the Hamblens' case. A married couple adopted a special-needs child and received a subsidy. When they later divorced, the mother sought to have the subsidy credited against her child-support obligation. The court ruled to the contrary: The subsidy was intended for the care of the child and therefore a resource for the child, not income for the parent. *Id.* at 614–15. As a result, the subsidy did not reduce the mother's financial obligation.[3]

¶ 16 Our own and the foregoing reasoning persuades us that the subsidy is intended as direct assistance to an adopted child with special needs. Despite the payment of the subsidy to the parents, it is for the benefit of the child. Indeed, it would be inappropriate to adjust a child's entitlement to financial support because the government has elected to subsidize the increased financial commitment that a special-needs child imposes on the parents. *See A.E.*, 686 N.Y.S.2d at 616. The subsidy is income rightly attributed to the child, not a credit against a parent's child-support obligation.

3. The North American Council on Adoptable Children states on its web-page that adoption subsidies were never intended to be used as "bargaining chips" between divorcing parents. Rather, the subsidies are the "entitlement of the adopted children, not the parents." As such, the payments should follow the children and be used strictly for the benefit of the children, not as income for a parent. NORTH AMER COUNCIL ON ADOPTABLE CHILDREN, *Child Support Payments and Title IV–E Adoption Assistance*, at http://www.nacac.org/subsidyfactsheets/childsupport.html (2002). The web-page also notes that the Internal Revenue Service has stated that Title IV–E adoption subsidies are exempt for purposes of taxation, further evidence that the subsidies are not to be considered income to the parents. Rev. Rul. 74–153, 1974–1 C.B. 20.

¶ 17 Hamblen refers us to two cases, *Pasternak v. Pasternak,* 310 N.J.Super. 483, 708 A.2d 1235 (Ct. Ch. Div.1997), and *Ward v. Ward,* 7 Neb.App. 821, 585 N.W.2d 551 (1998), in which the courts held that a Social Security death benefit could be used to reduce the amount of child support. These cases, however, are readily distinguishable. The benefits received by the children in both cases were intended to replace the wages of a deceased parent. As a substitute for parental income, those benefits reasonably would be included in the child-support calculation. The adoption subsidy, however, is for the benefit of the child and not a replacement for lost parental income. *See A.E.,* 686 N.Y.S.2d at 615.

¶ 18 Hamblen peppers his brief with a number of other assertions, none of which is compelling. He states first that, if the subsidies were the children's income, he could not have assigned the subsidies to Mrs. Hamblen in the Stipulation and Custody Agreement. This argument is moot given that this became a disputed issue.

¶ 19 Second, Hamblen asserts that the subsidies belong to the parents because the subsidies are paid to them, comparing these payments to that of State's foster-care program. This argument, however, undermines Hamblen's own position. If the subsidies are like those funds used to care for children in foster care, the funds should follow the children and be considered their money. In other words, if the money follows the children because it is for their benefit, it does not belong to the parents, or, quite simply, if the Hamblens had not adopted special-needs children, they would never have received the funds. It follows that Hamblen, to the extent to which he is the non-custodial parent, cannot now claim that the money that benefits and thus follows the children can be fully appropriated to him.

■ ¶ 20 Hamblen contends, third, that the intent of A.R.S. § 8–144(B) is to cover the entire expense of the children, not just the expenses attributable to their special needs. This argument is without merit because the obvious purpose of these adoption subsidies is to encourage individuals to adopt special-needs children by assisting parents in providing the extra care a special-needs child requires. *See A.E.,* 686 N.Y.S.2d at 616.

¶ 21 Fourth, Hamblen makes a public-policy argument to the effect that subjecting the parent of a subsidized child to a child-support obligation somehow vitiates the intent of promoting the adoption of special-needs children. The tacit premise of this argument is that a prospective parent, thinking that he may have to pay child support in the event of a divorce, may decide not to adopt a special-needs child. We disagree for two reasons, one of which is that a declaration of public policy in this guise is a matter for the state and federal legislatures and not the courts. Additionally, the provision of a subsidy is indeed a rational legislative means to encourage the adoption of a special-needs child by providing as an incentive financial support to aid in the care of such a child perceived by the legislature to need added support and care.

¶ 22 Nonetheless, the subsidy is but an addition to a parent's obligation of financial support. If this subsidy were credited against the parent's child-support obligation it would in effect, eliminate the supplementary effect of the subsidy. And, once the supplementary effect of the subsidy is taken, the effect of its incentive is undermined, leaving the custodial parent of the subsidized child with reduced if any support and greater difficulty in meeting the child's particular needs. The prospect of this scenario could as well deter a prospective parent from adopting a special-needs child.

■ ¶ 23 "A parent's child support obligation is paramount to all other financial obligations, and that parent has a legal duty to support his or her biological and adopted children." *Little v. Little,* 193 Ariz. 518, 521 ¶ 6, 975 P.2d 108, 111 (1999). If we were to accept Hamblen's position that he is entitled to a financial credit to the extent of the subsidies for his children, we would absolve him of his rightful duty to support his children and indeed place them in a worse position than children without special needs.

■ ¶ 24 We therefore affirm the trial court's ruling that the adoption subsidy is income attributable to the children. Howev-

er, the trial court used a factor of .161 in calculating the visitation adjustment. This means that the children visit with Hamblen 16.1% of the year. Given that the income subsidy is for the benefit of the children, 16.1% of the subsidy "follows" them when they are with Hamblen. Thus, the trial court should apportion 16.1% of the subsidy to Hamblen, adjusted as visitation is adjusted.

### B. Other Financial Calculations

¶ 25 Hamblen argues that the trial court's order was factually incorrect in several ways. We review these claims for an abuse of the court's discretion, *Kelsey*, 186 Ariz. at 53, 918 P.2d at 1067, and find no error.

¶ 26 First, Hamblen complains that, in calculating the visitation adjustment, the court used a factor of .161. He contends that it should have used a factor of .187, because the parties had stipulated to the .187 factor.

¶ 27 However, the only evidence of such a stipulation is a reference made by Mrs. Hamblen's counsel at the hearing: "There is a stipulation as to the visitation adjustment being 1.87(sic)." Generally, to be binding, an oral stipulation should be made in open court and entered in the minutes. ARIZ. R. CIV. P. 80(d). Even then, it is not binding on the trial court if contrary to the proper exercise of its discretion. *See Rutledge v. Arizona Bd. of Regents*, 147 Ariz. 534, 550, 711 P.2d 1207, 1223 (App.1985).

¶ 28 According to the Guidelines issued in 1996, the adjustment percentage for a non-custodial parent who visited his children between 73 and 120 days per year was .187. According to the most recent Guidelines, those issued in 2001, the adjustment percentage for a non-custodial parent who visits his children between 88 and 115 days per year is .161. Hamblen has not argued that he visits the children more than 115 days per year. Given that the trial court need not be bound by a stipulation even if there was one between the Hamblens and that the new Guidelines state that an adjustment percentage of .161 is appropriate for Hamblen's parenting time, the court's decision was within its discretion.

¶ 29 Second, Hamblen contends that the trial court erred in calculating the "over-twelve [years of age] adjustment" to his child-support obligation. The court stated that three of the children were older than twelve years of age at the time of the proceedings. This was true, but one of the older children should not have been counted by the court because that child was no longer in the Hamblens' custody. However, another son turned twelve in June 2002. On remand, the court can consider the amount calculated for the one son as a credit for the other son.

¶ 30 Hamblen complains, third, that the trial court erred in ordering that he claim three of the children as tax exemptions while Mrs. Hamblen claimed two of the children. Section 26 of the most recent Guidelines (section 25 of the former Guidelines) states:

> In any case in which the current child support obligation is at least $1,200 per year, there should be an allocation of the federal tax exemptions applicable to the minor children which as closely as possible approximates the percentages of support being provided by each of the parents.

Hamblen provides 95% of the child support for the children, Mrs. Hamblen the remainder. The court erred because the allocation of the tax exemptions does not approximate the percentages of support. On remand, the court can reallocate the exemptions and also consider why the child no longer in the Hamblens' custody and who was not included in the support determination nonetheless was included in the tax-exemption allocation.

¶ 31 Finally, the trial court determined that an additional $150 should be part of Hamblen's child-support obligation to cover child care. Hamblen contends that there was no evidence of child-care expenses presented and thus the court erred in adding this to his obligation. Contrary to his assertions, Mrs. Hamblen testified that she pays $150 a week in day-care expenses. The court ordered Hamblen to pay only $150 a month for such costs. Moreover, it then offset this amount with a $150 per month discretionary reduction because Mrs. Hamblen receives the adoption subsidies. The court did not err,

and, indeed, this might be an appropriate subject of reconsideration upon remand.

### C. Costs and Attorney's Fees

¶ 32 Mrs. Hamblen has requested her appellate costs and attorney's fees. Given that she has substantially fewer resources, we award her those costs and fees pursuant to A.R.S. § 25–324 (2000) upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

¶ 33 The orders concerning the adoption subsidy, the visitation adjustment and the child-care expenses are affirmed. The orders concerning the over-twelve adjustment and the tax exemptions are reversed and remanded for proceedings consistent with this decision.

CONCURRING: PHILIP HALL, Judge.

BARKER, Judge, concurring in part and dissenting in part.

¶ 34 I agree that the adoption subsidy should not be a *credit* that is applied to child support. I also agree that it is not an *entitlement* of either parent. It is quite clear to me, however, that the adoption subsidy should be attributed as *income for purposes of calculating child support* to whichever parent receives it. Thus, I dissent as to those portions of the foregoing opinion that hold otherwise.[4]

### 1. Under Arizona's Guidelines and Laws, the Adoption Subsidy Should Be Attributed as Income to the Receiving Parent for Purposes of Calculating Child Support.

¶ 35 The Arizona Child Support Guidelines are based on an "Income Share Model." Arizona Child Support Guidelines (Guidelines), Background, A.R.S. § 25–320, app. (2000).[5] The Income Share Model is premised on the principle that the court calculates a total

child support amount. *Id.* That total child support amount is to approximate "the amount that would have been spent on the children if the parents were living together." *Id.* Each parent then contributes his or her proportionate share. *Id.* This court has previously recognized that underlying principle:

[T]otal [child] support is to approximate the amount that would have been spent on the children if the parents and children were still living together.

*Cummings v. Cummings,* 182 Ariz. 383, 385, 897 P.2d 685, 687 (App.1994). The legislature has also specifically directed that a "relevant factor" in determining child support is the "standard of living the child would have enjoyed had the marriage not been dissolved." A.R.S. § 25–320(A).

¶ 36 Guideline 4(a), dealing with the "determination of the gross income of the parents," makes it clear that "[g]ross income includes *income from any source* [.]" (Emphasis added.) *See also In re Marriage of Robinson and Thiel,* 201 Ariz. 328, 331, 35 P.3d 89, 92 (App.2001)(" '[G]ross income' for purposes of calculating a parent's child support obligation 'includes income from any source[.]' ")(quoting Guideline 4(a)). Guideline 4(a) then lists a number of examples which are specifically designated as not being exclusive ("may include").

¶ 37 Additionally, Guideline 4(b) provides that "[g]ross income does *not* include sums received as child support or benefits received from means-tested public assistance programs[.]" (Emphasis added.) As the U.S. Department of Health and Human Services (HHS) written policy statement provides, "the use of a means test is prohibited" in determining whether an adoption subsidy will be paid:

Title IV–E adoption assistance is *not based* upon a standard schedule of itemized needs and countable income. . . . *[T]he use of a means test is prohibited* in the process

---

4. I also concur in Section B of the majority decision dealing with other unrelated issues in the case.

5. The Guidelines at issue are for actions filed after October 31, 1996. The Arizona Supreme Court has adopted more recent Guidelines for

actions filed after April 30, 2001. A.R.S. § 25–320, app. (Supp.2001). As to the specific Guidelines at issue in this case, the pertinent portions of the text are unchanged but the numbering (as indicated subsequently) is different as to certain provisions.

of selecting a suitable adoptive family, or negotiating an adoption assistance agreement, *including the amount of the adoption assistance payment.*

Subsidy Policy Announcement: Admin. On Children, Youth & Families (HHS Policy Announcement), *Amount of Adoption Assistance Payments* (Dep't Health & Human Servs. Jan. 23, 2001), *available at* http://www.adopting.org/SubsidyPolicy012312.html (emphasis added). The federal regulations pertaining to adoption subsidies are even more specific in this regard:

> There must be no income eligibility requirement (means test) for the prospective adoptive parent(s) in determining eligibility for adoption assistance payments.

45 CFR § 1356.40(c). Thus, Guideline 4(b) does not exclude the adoption subsidy as income.

¶ 38 As to the proposition that the tax law does not consider an adoption subsidy to be income (and therefore we should not do so for purposes of calculating child support), the Guidelines specifically direct otherwise. Guideline 4 provides that "[t]erms such as 'Gross Income' and 'Adjusted Gross Income' as used in these guidelines *do not have the same meaning as when they are used for tax purposes.*" Guideline 4, Note (emphasis added); *see also Baker v. Baker,* 183 Ariz. 70, 71, 900 P.2d 764, 765 (App.1995)(relying on Guideline 4 that " 'Gross Income' and 'Adjusted Gross Income,' as they are used in the Guidelines, do not mean the same as they do for tax purposes."). Thus, the tax treatment of adoption subsidies has no bearing on how we should treat them for purposes of calculating child support.

¶ 39 Attributing the adoption subsidy as income to the receiving parent does not make it an entitlement of the parents, nor does it

make it a credit; rather it gives the subsidy its necessary role in the context of determining child support. It is undisputed in this case that the annual adoption subsidy of $32,208 [6] was available and used for the children *prior* to the divorce. It is undisputed that the $32,208 is available for the children and being received by one of the parents *after* the divorce. Thus, applying the threshold principle that, if possible, income post-divorce approximate income pre-divorce, the adoption subsidy should be considered as income to the receiving parent for purposes of calculating child support. To not include it wreaks havoc on the foundation and fairness of any child support calculation where an adoption subsidy is at issue.[7]

**2. The Adoption Subsidy is Not "Income of a Child" for Purposes of Calculating Child Support.**

¶ 40 Guideline 23 [8] expressly deals with "income of a child." It provides that "[1][i]ncome earned *or* [2] *money received by a child* from sources other than child support *shall not relieve a parent of the support obligation established by these guidelines.*" *Id.* (Emphasis added.) If monies fall within this category, they should not be considered in determining child support.

¶ 41 Considering the adoption subsidy as income to the parent does not "relieve the parent" of any support obligations. That is the flaw in father's faulty argument. Considering the adoption subsidy as a *credit* would relieve a parent of his or her support obligation. Thus, considering the adoption subsidy as income to the receiving parent does not run afoul of this aspect of Guideline 23.[9]

¶ 42 More fundamentally, however, the adoption subsidy is simply not (1) "income earned ... by a child" or (2) "money received by a child." The adoption subsidy is

---

6. The subsidy at issue pertains to four of the children. The monthly subsidy is $671 per month per child, for a total monthly subsidy of $2,684. That results in the $32,208 annual figure.

7. For instance, in this case the adoption subsidy of $2684 per month is almost six times greater than the income of the mother ($400 per month). The subsidy is approximately one-third the income of the father ($7034 per month).

8. Under the 2001 Guidelines, Guideline 23 is renumbered as Guideline 24.

9. Likewise, Guideline 24, which deals with "credit for benefits," is not applicable as that guideline is based on benefits "as a result of *contributions made* by the parent[.]" (Emphasis added.) Guideline 24 is renumbered as Guideline 25 in the 2001 Guidelines.

neither income that the child has "earned" nor money that the child "receives." It is a subsidy from the government paid to the parents, by agreement, to promote the adoption and to be used by the parent for the benefit of the child. Both the federal statute that authorizes the payment and the related authorities clearly show the subsidy does not fit under either of these two prongs of Guideline 23.

¶ 43 First, the adoption subsidy is not "income earned" by a child. In order to qualify for the adoption subsidy the state must determine

> that there exists ... a specific factor or condition ... because of which it is reasonable to conclude that the child *cannot be placed* with adoptive parents *without providing adoption assistance* [.]

42 U.S.C. § 673(c)(2)(A)(emphasis added). Thus, the federal statute shows that the subsidy must be *necessary* in order to bring about the adoption. As the majority accurately notes, the adoption subsidy is a benefit "intended for the care and maintenance of the child." *Supra* at ¶ 16 (relying on *A.E. v. J.I.E.*, 179 Misc.2d 663, 686 N.Y.S.2d 613, 614–15 (1999)). The child does not *earn* it.

¶ 44 Second, the adoption subsidy is not *received* by the child nor was it intended that the child would determine how it is spent. The HHS Policy Announcement makes it clear that the purpose of the subsidy is to "combine with" the income of the parents to benefit the child:

> [T]he title IV–E adoption assistance program is intended to encourage an action that will be a lifelong social benefit to certain children and not to meet short-term monetary needs during a crisis. ...
> *The payment that is agreed upon should combine with the parents' resources to cover the ordinary and special needs of the child projected over an extended period of time and should cover anticipated needs* [.]

HHS Policy Announcement, *Amount of Adoption Assistance Payments.* As stated, the very purpose of the subsidy is to provide for the needs of the child. It is paid to the parents for that purpose. *Id.* The parents, however, have great discretion in how the funds are used to meet those needs:

> Once the adoption assistance agreement is signed and the child is adopted, the adoptive parents are free to make decisions about expenditures on behalf of the child without *further agency approval or oversight.* Hence, once an adoption assistance agreement is in effect, the parents can spend the subsidy in any way they see fit to incorporate the child into their lives. Since there is no itemized list of approved expenditures for adoption assistance, the State cannot require an accounting for the expenditures.

*Id.* (emphasis in original). As the express terms of the HHS Policy Announcement indicate, "*the adoptive parents* are free to make decisions about expenditures on behalf of the child" with this subsidy. *Id.* (emphasis added). It is the parent, not the child, who both receives the monies and determines how they are spent. Thus, the adoption subsidy does not qualify under the second part of Guideline 23 as "money received by a child."

¶ 45 Guideline 23 is simply not applicable here. The adoption subsidy is not income of a child.[10] The adoption subsidy, in the words of the HHS Policy Announcement, "should combine with the parents resources to cover the ordinary and special needs of the child." *Id.* That is not a definition of income due to the child that is to be "stockpiled" until the child reaches a majority, or to be spent in whatsoever manner the child wishes, or monies for which a trustee's accounting is held. It is a definition of income to be used by the receiving parent for the benefit of the child. It should accordingly be attributed as income to the receiving parent in determining child support, regardless of which parent receives it.

*Conclusion*

¶ 46 As the Guidelines clearly state, the purpose of the Guidelines is to calculate a

---

**10.** Neither party contended at trial that the subsidy was income of a child. The father claimed it was a credit. The mother argued, as this dissent determines, that it should be attributed as income to the parent receiving it.

" 'total child support amount' that approximates the amount that would have been spent on the children if the parents were living together." Guidelines, Background. As Arizona's statutes expressly require, one of the key factors in determining child support is "the standard of living the child would have enjoyed had the marriage not been dissolved." A.R.S. § 25–320(A)(3). The HHS Policy Announcement further directs that the adoption subsidy "combine with the parents resources" to meet the child's needs.

¶47 Because the majority's decision violates the express purpose of § 25–320(A)(3), the Guidelines, and the applicable federal policy, I respectfully dissent. The $32,208 annual adoption subsidy paid here is clearly income that should be attributed to the parent receiving it in calculating child support.