Merrimack
No. 2003-531

IN THE MATTER OF DIANNE (WHITNEY) HENNESSEY-MARTIN
AND MICHAEL J. WHITNEY

Argued: May 5, 2004
Opinion Issued: June 30, 2004

*Perkins & Puckhaber, P.A.*, of Concord (*Diane M. Puckhaber* on the brief and orally), for the petitioner.

*Goodnow, Arwe, Ayer, Prigge, Hoppock & Kane, P.C.*, of Keene (*Larry S. Kane* on the brief and orally), for the respondent.

DALIANIS, J. The petitioner, Dianne Hennessey-Martin, appeals an order recommended by a Marital Master (*Deborah Kane Rein*, Esq.) and approved by the Superior Court (*Fitzgerald*, J.) ordering her to pay $185.00 per week in child support for her adoptive children to the respondent, Michael J. Whitney. We affirm.

The parties were married in Texas in 1991. In early 1995, they adopted two children, brothers, ages seven and five. The children were deemed "hard to place" due to their ages, sibling relationship, and status as members of a minority race. Because Texas determined that the children could not be placed for adoption with suitable adoptive parents without the provision of adoption assistance, *see* Tex. Fam. Code. Ann. § 162.301 (2002), Texas provided, and continues to provide, an adoption subsidy, currently $1064.00 per month, which is renewed on a year-to-year basis.

The parties moved to New Hampshire where they were divorced in 1997. The petitioner initially had sole physical custody of the children; however, the respondent assumed physical custody in 1999 because the

petitioner had difficulty controlling them. At the time of the divorce, the respondent was managing a successful business, while the petitioner made substantially less income. Nonetheless, the parties agreed that because of the "adoption subsidy," the respondent would contribute no child support to the petitioner. Later, when the respondent assumed custody of the children, the parties continued to agree that the custodial parent receive no child support.

In 2000, the respondent's business failed and he declared bankruptcy. By then, the petitioner was attending law school. In 2001, the respondent filed a petition to modify child support, and the court ordered the petitioner to pay the statutory minimum of $50.00 per month in child support, subject to review upon her anticipated graduation from law school. When the petitioner graduated from law school, the court ordered her to pay child support in the amount of $185.00 per week.

In making its order, the court concluded that the "adoption subsidy" would not count as a set-off against the non-custodial parent's child support obligation, nor suffice as a reason to deviate from the guidelines. The court reasoned that the "purpose of the subsidy was not to benefit a non-custodial parent, but was to provide a custodial parent with an incentive to provide ongoing care for hard-to-place children and to assist with costs associated with raising adopted children." Thus, the court included the adoption subsidy as gross income to the respondent when it calculated the petitioner's support under the guidelines.

The petitioner appeals, arguing that RSA chapter 458-C mandates that the court grant her a credit for the adoption subsidy, or, alternatively, that the court should deviate from the guidelines. *See* RSA ch. 458-C (Supp. 2003). She also argues that the specific purpose of the adoption agreements was to provide support for the child, thus relieving her of her child support obligation. Finally, she contests the trial court's failure to deviate from the guidelines in light of her student loans and the respondent's alleged underemployment. We address each argument in turn.

The petitioner argues that the adoption subsidy should be credited toward her child support obligation. She contends that because her child support obligation is approximately $801.00 per month, and the adoption subsidy is $1064.00 per month, she should pay no child support. We disagree.

In cases of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *State v. McCarthy*, 150 N.H. 389, 390 (2003). We ascribe to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise. *Id.*

Our first task is to determine how to treat adoption subsidies under our Child Support Guidelines. Adoption subsidies are "provided as part of a joint federal and state plan to promote and subsidize the adoption of children with special needs." *Hamblen v. Hamblen*, 54 P.3d 371, 373 (Ariz. Ct. App. 2002). The federal plan, passed in 1980 as part of the Adoption Assistance and Child Welfare Act, provides federal reimbursements to States that pay benefits to parents who adopt children with special needs. 42 U.S.C. §§ 670 *et seq.* (2000); *see Hamblen*, 54 P.3d at 373. "Every state now has an adoption assistance program." *Hamblen*, 54 P.3d at 373; *see also* Tex. Fam. Code. Ann. § 162.301; RSA ch. 170-F (2002); *In re Darien S.*, 842 A.2d 1177, 1182 n. 7 (Conn. Ct. App. 2003).

We recognize that a few intermediate appellate courts have determined, under their respective child support guidelines, that adoption subsidies qualify as income to the child. None of these cases, however, were decided under RSA chapter 458-C, the New Hampshire Child Support Guidelines, and each of them involve statutes different from our statute. *See In re Marriage of Newberry*, 805 N.E.2d 640, 643 (Ill. Ct. App. 2004); *Strandberg v. Strandberg*, 664 N.W.2d 887, 889-90 (Minn. Ct. App. 2003); *Hamblen*, 54 P.3d at 374-75.

We hold that adoption subsidies qualify as gross income under RSA chapter 458-C and, thus, affirm the master's ruling below. "Gross income" is broadly defined as:

> all income from any source, whether earned or unearned, including ... wages, salary ... social security benefits, trust income ... and payments from other government programs (except public assistance programs, including aid to families with dependent children, aid to the permanently and totally disabled, supplemental security income, food stamps, and general assistance received from a county or town) ....

RSA 458-C:2, IV.

While there is no specific provision for adoption subsidies, the legislature does provide for the inclusion of "other government programs" within the definition of gross income, so long as those programs are not "public assistance programs." *Id.* "Public assistance programs" are not defined, for the purposes of RSA chapter 458-C, but the legislature does provide examples of such programs. In each instance, eligibility for "public assistance programs" is determined by a showing of economic need. *See* RSA 167:4, I (2002) (persons eligible to receive food stamps if they do not have "sufficient income or other resources to provide a reasonable subsistence compatible with decency and health"); RSA 165:1-a, :1-c (2002) (general assistance from a county or town provided to any person "who is

poor and unable to support himself"); RSA 167:5, I (2002) (aid to families with dependent children and aid to the permanently and totally disabled granted upon a showing of need); 42 U.S.C. § 1382(a)(1), (c)(1) (2000) (Supplemental Security Income provides a minimum income for disabled people based upon need). We infer, based upon the legislature's intent as expressed in RSA 458-C:3, IV (obligor parent not required to pay child support when such order would put the parent below the self-support reserve) and from the nature of the listed programs, that the legislature's intent in excluding these and other such public assistance programs from inclusion in the definition of gross income was to assure that obligor parents and their families would not be forced into extreme poverty in order to pay child support.

■ Adoption assistance programs, unlike other public assistance programs, are not based upon adoptive parents' levels of income; instead, the use of a "means test" is "prohibited in the process of selecting a suitable adoptive family, or in negotiating an adoption assistance agreement, including the amount of the adoption assistance payment." CHILD WELFARE POLICY MANUAL § 8.2A.2 (September 24, 2001) (citing U.S. Dep't of Health and Human Services Policy Announcement ACYF-CB-PA-01-01 (January 23, 2001)); see 45 CFR § 1356.40(c). The principle of ejusdem generis provides that, where specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words. State v. Meaney, 134 N.H. 741, 744 (1991). Because the adoption assistance program is not similar in nature to the programs described as "public assistance programs" in RSA 458-C:2, IV, we conclude that an adoption subsidy should be included in the calculation of gross income as an "other government program."

Adoption assistance programs qualify as gross income because they provide a financial incentive to people who adopt "special needs" children. These increased costs include not only the special needs of the child, but also the circumstances of the adopting parents, such as "the family's capacity to incorporate the child into their household in relation to their lifestyle, standard of living and future plans, as well as their overall capacity to meet the immediate and future needs (including education) of the child." CHILD WELFARE POLICY MANUAL, supra. Forcing a custodial parent to accept the adoption assistance payment as a substitute for the non-custodial parent's child support would negate the supplementary effect of the adoption subsidy because it would transform the adoption subsidy into the exclusive means of support and disregard the increased costs associated with the care of "special needs" children. Similarly,

allowing the petitioner to credit the adoption subsidy against her child support payment would be against the interests of the adopted children because it would diminish the resources deemed necessary for the care and incorporation of these "special needs" children.

The petitioner argues, in the alternative, that the adoption assistance payments should constitute a special circumstance that justifies a downward deviation from the support guidelines. We disagree.

The master's determination of an award of child support will not be set aside absent an unsustainable exercise of discretion. *Wheaton-Dunberger v. Dunberger*, 137 N.H. 504, 507 (1993); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). The master's discretion to award support differing from the prescribed formulas is limited to situations in which the master finds special circumstances. *Wheaton-Dunberger*, 137 N.H. at 507.

■ Adoption assistance payments do not, in and of themselves, justify a deviation from the child support guidelines. The actual amount received under the adoption assistance agreement is an issue decided between the adoptive parents and the State of Texas. We find that the trial court's decision not to deviate from the guidelines because of the adoption subsidy was a sustainable exercise of discretion.

Finally, the petitioner argues that the specific language of two, among the many, adoption assistance agreements demonstrates that the adoption assistance payments are for the same purpose as child support payments and that her payments would be duplicative.

■ While the 1997-1998 adoption subsidy agreement states that the subsidy is for "food, clothing and shelter" and the 1995-1996 subsidy agreement states that it is for "care and support," neither agreement states that it provides the exclusive resource for the care of the children. Instead, both agreements state, "[T]he assistance is for the purpose of *assisting* with care and services needed by the child." (Emphasis added.) Therefore, we disagree with the petitioner's contention that the adoption assistance agreements were intended to provide the only resource necessary to support the children.

The petitioner next challenges the trial court's failure to deviate from the guidelines because: (1) she is responsible for repaying her student loans; and (2) the respondent was allegedly voluntarily underemployed.

■ The petitioner first argues that the court should have deviated from the child support guidelines pursuant to RSA 458-C:5, I(a) and (j) because of her expenses related to paying her student loans. We note that RSA 458-C:5, I(a) relates to educational expenses concerning the child, not

educational expenses of the parent. The record indicates that she paid no child support at the beginning of law school, and the minimum amount of child support, fifty dollars per month, at the end; thus, she received the benefit of a minimal child support order for three years. We conclude that although the petitioner may have expenses related to her student loans, this was considered by the master. In light of all the relevant circumstances, the decision not to deviate from the guidelines pursuant to RSA 458-C:5, I(j) was a sustainable exercise of discretion.

We do not find the petitioner's arguments concerning the respondent's alleged voluntary underemployment persuasive either. RSA 458-C:2, IV(a) states that a court, "in its discretion, may consider as gross income the difference between the amount a parent is earning and the amount a parent has earned in cases where the parent voluntarily becomes unemployed or underemployed." The petitioner points to evidence that the respondent was not employed full-time, has a college degree, and is licensed to sell real estate, but works only part-time as a substitute teacher.

The respondent presented evidence, however, that he had previously been the owner of a convenience store, but had gone bankrupt. He is currently attempting to pursue a career in real estate, although he has not yet sold a house. The record reflects that the respondent spends a great deal of time caring for the younger of the two adopted children, which affects his ability to spend time earning other income. Based upon the evidence, we cannot say that the court's decision not to find the respondent voluntarily underemployed was an unsustainable exercise of discretion.

Although the petitioner makes additional arguments to deviate from the child support guidelines, we find that those arguments are unpersuasive and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.