In re the MARRIAGE OF Kimberly E. BOLDING–ROBERTS, Appellee,

and

Charles Roberts, Appellant.

No. 04CA1010.

Colorado Court of Appeals.
Division A.

April 21, 2005.

No Appearance for Appellee.

Jerry L. Garling, Colorado Springs, Colorado, for Appellant

PLANK *, J.

In this post-dissolution of marriage proceeding between Charles Roberts (father) and Kimberly E. Bolding–Roberts (mother)

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

to modify child support, father appeals the district court's order regarding treatment of an adoption subsidy for the parties' adopted daughter. We affirm.

The parties' marriage was dissolved in 2001. At the time of entry of permanent orders, two of the parties' three children were unemancipated. One of those children, the parties' daughter, is an adoptee for whom the State of Colorado pays a monthly subsidy.

As part of its permanent orders, the court ordered father to pay $404 per month in child support. In calculating this amount, the district court included the adoption subsidy for the parties' daughter as part of mother's income on the child support worksheet.

In March 2003, father filed a motion to modify child support on the grounds that the calculation of overnights in the original order was improper and the adoption subsidy should have reduced his child support obligation. The court held a hearing on father's motion, and the magistrate recalculated child support to subtract the adoption subsidy from mother's income, resulting in an increase in father's child support obligation to $727.44 per month. The parties subsequently stipulated to a different calculation of mother's income, which changed father's child support obligation to $521 per month.

Father filed a motion for review of the magistrate's order, which was adopted by the district court.

■ On appeal, father contends the district court erred in calculating child support because the court did not consider whether the adoption subsidy reduced the child's basic needs, thereby reducing his support obligation. We disagree.

■ We review the district court's award of child support for an abuse of discretion. *In re Marriage of Klein*, 671 P.2d 1345 (Colo.App.1983). However, the issue of whether the court properly treated the adoption subsidy in determining child support is an issue of law that we review de novo. *See*

§ 24–51–1105, C.R.S.2004.

*People In Interest of J.R.T.*, 55 P.3d 217 (Colo.App.2002)(whether the trial court applied the correct legal standard in making its findings is an issue reviewed de novo), *aff'd sub nom. People v. Martinez*, 70 P.3d 474 (Colo.2003).

The adoption subsidy in question is provided as part of a joint federal and state plan to promote and subsidize the adoption of children with special needs. The federal plan, codified at 42 U.S.C. § 670, et seq. (2000 & Supp.2004), was passed in 1980 as part of the Adoption Assistance and Child Welfare Act. The program provides federal reimbursements to states that pay benefits to parents who adopt children with special needs. *Hamblen v. Hamblen*, 203 Ariz. 342, 54 P.3d 371 (Ct.App.2002).

Under Colorado's adoption subsidy program, the payment is made directly to the adoptive parents, and is intended "to help, or remove financial barriers to, the adoption of Colorado children with special needs by providing assistance to the parent or parents in the payment of expenses of caring for and raising the child." Department of Human Services Regulation No. 7.203.23(A), 12 Code Colo. Regs. 2509–3.

A "child with special needs" is defined as "a child with a special, unusual, or significant physical or mental disability, or emotional disturbance, or such other condition which acts as a serious barrier to the child's adoption." Section 26–7–101(2), C.R.S.2004.

Here, in its modified child support order, the magistrate treated the adoption subsidy as income of the child, rather than of mother, by removing it from the computation of mother's income. However, neither the magistrate nor the district court reached the question of whether, as income of the child, the subsidy reduces the child's basic needs under § 14–10–115(13)(b), C.R.S.2004.

■ We are unaware of any reported Colorado decisions that have addressed the treatment of adoption subsidies in calculating child support. However, the issue has been addressed in several other jurisdictions. *See, e.g., Hamblen v. Hamblen, supra; In re Marriage of Newberry*, 346 Ill.App.3d 526, 282 Ill.Dec. 21, 805 N.E.2d 640 (2004);

*Strandberg v. Strandberg*, 664 N.W.2d 887 (Minn.Ct.App.2003); *In re Hennessey–Martin*, 151 N.H. 207, 855 A.2d 409 (2004). Although cases from other jurisdictions are not controlling, they ' provide some guidance in resolving the issue here. *See People ex rel. Orcutt v. Dist. Court*, 164 Colo. 385, 435 P.2d 374 (1967).

In *Hamblen v. Hamblen, supra*, the Arizona Court of Appeals determined that a noncustodial parent should not receive an offset against his child support obligation for the amount of an adoption subsidy. In reaching this conclusion, the court stated:

> [T]he [adoption] subsidy is but an addition to a parent's obligation of financial support. If this subsidy were credited against the parent's child-support obligation it would in effect, eliminate the supplementary effect of the subsidy. And, once the supplementary effect of the subsidy is taken, the effect of its incentive is undermined, leaving the custodial parent of the subsidized child with reduced if any support and greater difficulty in meeting the child's particular needs. The prospect of this scenario could as well deter a prospective parent from adopting a special-needs child.

*Hamblen, supra*, 203 Ariz. at 346, 54 P.3d at 375.

As the court recognized in *Hamblen*, to adopt father's position that he should receive a credit against his child support obligation for the amount of the adoption subsidy would be tantamount to absolving father of his duty to support his child, placing her in a worse position than a child without special needs. *See Hamblen, supra*.

The New Hampshire Supreme Court recently took a similar position, stating: "[A]llowing the petitioner to credit the adoption subsidy against her child support payment would be against the interests of the adopted children because it would diminish the resources deemed necessary for the care and incorporation of these 'special needs' children." *In re Hennessey–Martin, supra*, 151 N.H. at 212, 855 A.2d at 413.

Although the decisions of the New Hampshire and Arizona courts appear to be at

odds because the court in *Hennessey–Martin* treated the adoption subsidy as gross income of the parent, both courts determined that the subsidy should not be considered a credit against the noncustodial parent's child support obligation. We agree that adoption subsidies should be treated the same way in this state.

A child support order is calculated to serve the best interests of children and to mitigate the potential harm to them caused by the dissolution of marriage. *In re Marriage of Bohn,* 8 P.3d 539 (Colo.App.2000). Had the parties not separated, the child would have enjoyed the benefit of both parents' incomes, as well as the subsidy. Thus, the underlying intent of the child support statute is best served by declining to offset a noncustodial parent's support obligation by the amount of an adoption subsidy or to consider the subsidy as a factor that may diminish the child's basic needs within the meaning of § 14–10–115(13)(b).

We are not persuaded that *In re Marriage of Kluver,* 771 P.2d 34 (Colo.App.1989), cited by father, requires a different conclusion. In *Kluver,* the father argued that the trial court erred in failing to add the child's adjusted gross income to that of mother before determining the father's proportionate share of the child support obligation. A division of this court disagreed, based on the then applicable statute, but instructed the trial court on remand to consider the child's financial resources and determine whether they diminished the child's basic needs. *Kluver, supra,* 771 P.2d at 36.

Other than generally referring to the child's "gross income," the *Kluver* decision did not specify the source of that income, including whether it was from a federal program, such as the adoption subsidy at issue here. Thus, *Kluver* provides no guidance on the issue of whether an adoption subsidy should be considered income of the child that may reduce the child's basic needs under § 14–10–115(13)(b).

Nor are we persuaded that *In re Marriage of Quintana,* 30 P.3d 870 (Colo.App.2001), requires a contrary result. In *Quintana,* a division of this court concluded that a trial court did not abuse its discretion in adjusting father's child support obligation pursuant to § 14–10–115(13)(b) based upon social security disability payments received by a mother on behalf of her children.

Unlike the social security payments at issue in *Quintana,* which were intended as a substitute or replacement for lost income of a disabled parent, the adoption subsidy at issue here is intended as a supplement to allow the parents to address the special needs of the adopted child. Given the different purposes underlying these two types of payments, we conclude that there is a reasonable basis for treating them differently under § 14–10–115(13)(b).

We perceive no abuse of discretion in the court's treatment of the subsidy in calculating child support.

The order is affirmed.

Chief Judge DAVIDSON and Judge NEY* concur.