In re the **MARRIAGE OF Eric DUNKLE, Appellant,**

and

**Michelle H. Valentine, Appellee.**

**No. 07CA0507.**

Colorado Court of Appeals, Div. VI.

Aug. 21, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

The Majors Law Firm, P.C., James E. Majors, Fruita, Colorado, for Appellant.

Edward Dale Parish, LLC, Dale Parrish, Golden, Colorado, for Appellee.

Opinion by Judge DAILEY.

In this dissolution proceeding, Eric Dunkle (father) appeals from the permanent orders awarding child support to Michelle H. Valentine (mother). We affirm.

The parties had a child together out-of-wedlock in May 2003. An order was entered in December 2003, requiring father to pay $625 per month to mother as support for the child. The parties then married in September 2005. Father filed a petition for dissolution and a decree dissolving the parties' marriage was entered in December 2006. Final orders were entered, which resolved all issues between the parties except child support for the parties' minor child, which was reserved for a later hearing. After the hearing, the trial court ordered father to pay child support in the amount of $906 per month to mother.

## I.

Father first contends that the trial court erred in excluding mother's overtime pay from the determination of her gross income. We disagree.

Pursuant to section 14–10–115(5)(a)(I)(Z), C.R.S.2007 (formerly codified at § 14–10–115(7)(a)(I)(C) until Mar. 16, 2007), overtime pay is part of a party's gross income "if the overtime is required by the employer as a condition of employment." *In re Marriage of Rice*, 987 P.2d 947, 948 (Colo.App.1999).

The issue of whether overtime is required as a condition of employment is factual in nature, and we review such issues for abuse of discretion only. *See In re Marriage of Atencio*, 47 P.3d 718, 720 (Colo.App. 2002). "Abuse of discretion occurs only when the trial court's decision as to child support is manifestly arbitrary, unreasonable, or unfair." *Id.* Thus, we will not disturb the factual finding of the trial court that mother's overtime work was not required as a condition of her employment unless clearly erroneous and not supported by the record. *See id.*

Here, the trial court found that mother elected to work additional hours voluntarily and that overtime was not required as a condition of her employment. Father argues that this finding is erroneous pursuant to *Rice*. We disagree and find that *Rice* is distinguishable from the present case.

In *Rice*, a division of this court held that the overtime worked by the father, who was employed by a closely-held corporation of which he was part owner, was required because of the responsibilities of his position. 987 P.2d at 949. The division based its holding on findings that the father was his own boss and had no supervisor to command him to work overtime, the father was not able to perform his job duties unless he worked overtime, and the father's failure to work overtime would result in penalties to the corporation that would hurt him financially as an owner of the corporation. *Id.* Therefore, the division reasoned that the conclusion that the father had a choice whether to work overtime ignored the economic realities of his situation. *Id.*

In contrast to the father in *Rice*, mother here does not own the business for which she works as a certified nurse assistant. Mother testified that her employer does not require her to work overtime and that if she chose not to work overtime, her employer would send another nurse assistant to perform the additional duties needed for

the children in her home. The only disadvantage to mother in not working overtime would be a loss of income.

The trial court thus did not abuse its discretion in determining that mother's overtime was not required as a condition of her employment.

## II.

■ Mother has one foster child and five adopted children, none of whom is a child of father and all of whom have disabilities ranging from moderate to severe. On behalf of these children, she receives a foster care payment of approximately $1200 per month and adoption subsidies of approximately $5000 per month. Father contends that the trial court erred in failing to include these payments in her gross income for purposes of calculating child support. We disagree.

■ Although we generally review the trial court's award of child support for abuse of discretion, whether the court properly considered these types of payments in calculating child support is an issue of law that we review de novo. *See In re Marriage of Bolding–Roberts*, 113 P.3d 1265, 1266 (Colo.App. 2005).

"Income" for child support purposes is defined at section 14–10–115(3)(c), C.R.S.2007, as "the actual gross income *of a parent*" (emphasis added).

No reported Colorado appellate court opinion has decided whether adoption subsidies and foster care payments should be included in a parent's income when computing child support. Courts in other states, however, have held that, because these payments are intended to benefit the adopted or foster child, they are considered income to the child and not to the parent. *See Hamblen v. Hamblen*, 203 Ariz. 342, 54 P.3d 371, 374 (Ct.App.2002) ("Foster and adoptive parents are not recipients of Federal foster care and adoption assistance payments; rather, foster care and adoption assistance payments are made on the child's behalf to meet his or her needs." (quoting U.S. Department of Health & Human Services, *Child Welfare Policy Manual* § 8.4B (2001) ) ); *In re Marriage of Newberry*, 346 Ill.App.3d 526, 282 Ill.Dec. 21,

805 N.E.2d 640, 643–44 (2004) (adoption subsidies are benefits belonging to the children); *Strandberg v. Strandberg*, 664 N.W.2d 887, 890 (Minn.Ct.App.2003) (same); *A.E. v. J.I.E.*, 179 Misc.2d 663, 686 N.Y.S.2d 613, 615 (Sup.Ct.1999) (same); *Gambill v. Gambill*, 137 P.3d 685, 690 (Okla.Civ.App.2006) (same); *see also In re Paternity of M.L.B.*, 633 N.E.2d 1028, 1029 (Ind.Ct.App.1994) (foster care payments should be excluded from parental income); *Bryant v. Bryant*, 218 S.W.3d 565, 569 (Mo.Ct.App.2007) (same).

Father relies on *Bolding–Roberts* and *In re Hennessey–Martin*, 151 N.H. 207, 855 A.2d 409 (2004), for a contrary conclusion.

In *Bolding–Roberts*, the trial court treated an adoption subsidy as income of the child, not the parent. *Bolding–Roberts*, 113 P.3d at 1266–67. That determination was not challenged on appeal. Rather, the claim made on appeal was that the adoption payments should reduce the father's support obligation pursuant to section 14–10–115(11)(b), C.R.S.2007 (formerly codified at § 14–10–115(13)(b) ), which allows for consideration of any additional factor that actually diminishes the basic needs of the child. *Bolding–Roberts*, 113 P.3d at 1266. A division of this court disagreed and held that adoption subsidies should not be credited to reduce a parent's child support obligation. *Id.* at 1266–68.

Thus, we find no support in *Bolding–Roberts* for father's assertion that the trial court should have included the adoption subsidies and foster care payments in mother's income.

In *Hennessey–Martin*, the court did determine that adoption subsidies count as a parent's income. However, the *Hennessey–Martin* decision was based on New Hampshire's child support statute, which defined a parent's income as including that received from "other government programs." *See Hennessey–Martin*, 855 A.2d at 412. Section 14–10–115(5)(a)(I), C.R.S.2007, contains no such provision.

On balance, we find persuasive the reasoning employed in the *Hamblen–Bryant* line of cases and decline to follow the decision in *Hennessey–Martin*.

*In re Marriage of Quintana,* 30 P.3d 870, 871 (Colo.App.2001), further supports our treatment of adoption subsidies and foster care payments as income to the child. The division treated social security payments received for a child due to a parent's disability as a resource of the child for child support computation purposes and not as income of the parent who is caring for the child. The rationale for considering an adoption subsidy or foster care payment as income to the child and not the parent is even stronger than that for social security payments, because social security disability benefits received on behalf of the children are designed as payments to replace the parent's decreased earning potential, whereas an adoption subsidy or foster care payment is paid for the benefit of the child and not as a replacement for lost parental income. *See A.E.,* 686 N.Y.S.2d at 615 (adoption subsidy).

■ For these reasons, we conclude that the adoption subsidies and foster care payments received by mother are income of the children on whose behalf they are received and not income of mother.

Consequently, the trial court did not err in excluding these payments from mother's gross income or, because they are income to children who are not father's children, failing to otherwise consider them for child support purposes. *Cf. In re Marriage of Laughlin,* 932 P.2d 858, 862 (Colo.App.1997) ("resources of a non-parent are not to be considered in the computation of child support").

## III.

Last, father contends that the trial court failed to follow section 14–10–122, C.R.S. 2007, and the law of the case in calculating father's child support obligation. We find no merit in these contentions.

### A.

Father argues for the first time on appeal that the child support order entered in 2003, prior to the parties' 2005 marriage, is still in effect and therefore mother had to file a motion to modify that order under section 14–10–122, rather than having the court decide the issue of child support anew in con-

nection with the parties' 2006 dissolution action. Father claims that he may raise this issue for the first time on appeal because the court lacked subject matter jurisdiction to calculate child support in light of the prior order.

■ Subject matter jurisdiction concerns the court's authority to deal with the class of cases in which it renders judgment. *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 513 (Colo.1986); *In re Marriage of Stroud,* 631 P.2d 168, 170 (Colo. 1981). In determining whether the court has such jurisdiction, reference must be made to the nature of the claim and the relief sought. *Stroud,* 631 P.2d at 171. "It is the authority to decide a case, not the correctness of the decision, which makes up jurisdiction." *Paine, Webber, Jackson & Curtis, Inc.,* 718 P.2d at 513. Whether a court has subject matter jurisdiction is an issue that may be raised at any time, even for the first time on appeal. *See id.*

■ Here, the trial court had authority to determine the child support obligations of the parties upon dissolution of their marriage pursuant to section 14–10–115(2), C.R.S.2007 (formerly codified at § 14–10–115(1) until Mar. 16, 2007). The application of this statute by the court and the decision whether to apply section 14–10–122 because of the existence of an earlier order do not involve the court's basic authority to determine child support. *Cf. Stone's Farm Supply, Inc. v. Deacon,* 805 P.2d 1109, 1113–14 (Colo.1991) (statute at issue did not restrict the court's power to act but rather merely articulated the circumstances under which it could act; therefore the alleged violation of the statute did not implicate the court's subject matter jurisdiction); *Paine, Webber, Jackson & Curtis, Inc.,* 718 P.2d at 513–14.

Despite father's efforts here to characterize his challenge as relating to the trial court's subject matter jurisdiction, his argument that the court should have applied section 14–10–122 is merely procedural, and because it was not raised in the trial court, it has been waived. *See People in Interest of Clinton,* 762 P.2d 1381, 1388 (Colo.1988) (failure to follow a procedural requirement

does not deprive court of subject matter jurisdiction); *Leewaye v. Indus. Claim Appeals Office,* 178 P.3d 1254, 1257 (Colo.App. 2007) (decision on a procedural issue does not implicate subject matter jurisdiction); *Atencio,* 47 P.3d at 722 (issue not raised in trial court is waived).

### B.

■ Father also argues that the trial court erred in not applying the law of the case to the earlier finding in the 2003 support order that mother's gross income included her overtime work.

■ The law of the case applies only to a court's decisions of law and not to its resolution of factual questions. *Governor's Ranch Prof'l Ctr., Ltd. v. Mercy of Colo., Inc.,* 793 P.2d 648, 650 (Colo.App.1990). The determination whether mother's overtime was required as a condition of her employment is a factual issue. Thus, the law of the case does not apply.

In addition, the law of the case does not apply to the 2003 support order entered before the parties' marriage because after the parties married, that order became null and void. *See Schaff v. Schaff,* 446 N.W.2d 28, 32 (N.D.1989) (when parents of a child born out-of-wedlock marry each other, the child support provisions of the prior paternity judgment are nullified, and the court determining the dissolution visits anew the issue of support for the child); *Griffis v. Griffis,* 202 W.Va. 203, 503 S.E.2d 516, 524 (1998)(when the parents of a minor child marry or remarry each other, any child support obligation under a preexisting child support order automatically terminates).

### IV.

■ Mother requests an award of the attorney fees she incurred on appeal, citing C.A.R. 39.5. Attorney fees are awardable under C.A.R. 39.5 only if the party seeking fees states a legal basis for the recovery of fees. Because mother states no legal basis for her request, we deny it. *See Reed Mill &*

*Lumber Co. v. Jensen,* 165 P.3d 733, 740 (Colo.App.2006).

The judgment is affirmed.

Judge WEBB and Judge ROMÁN concur.