JANE ANN WARD, APPELLANT, V.
KENNETH CARL WARD, APPELLEE.
585 N.W. 2d 551

Filed October 27, 1998. No. A-97-440.

Diane B. Metz for appellant.

Jerome J. Ortman for appellee.

IRWIN, Chief Judge, and HANNON and INBODY, Judges.

HANNON, Judge.

Jane Ann Ward appeals from a dissolution decree, alleging the trial court erred (1) in the division of marital property because she was awarded very little property while Kenneth Carl Ward received substantial property and (2) in awarding child support for the parties' adopted child in view of the fact the Social Security Administration pays $691 per month for the benefit of the adopted child on behalf of the child's deceased mother. We conclude the trial court did not award Jane a reasonable amount of property in the division and that the Social Security benefits justified a deviation from the Nebraska Child Support Guidelines. We also remand the cause for a determination of which parent should provide health insurance. Therefore, we affirm in part as modified, and in part reverse, and remand with directions.

## BACKGROUND

Jane and Kenneth were married on October 21, 1989, in Omaha. No children were born of the marriage, but Jane adopted Kenneth's 6-year-old daughter, Lindsey, who had been adopted by Kenneth and his now deceased former wife. In the final decree, the court awarded custody of Lindsey to Kenneth and ordered Jane to pay $358 per month in child support. Both parties were ordered to maintain health and accident insurance for Lindsey and to pay one-half of the unreimbursed medical, dental, orthodontic, and eyeglasses expenses. Jane contests the child support allowance on the basis that she and Lindsey failed to have a parent-child relationship and that Kenneth receives $691 per month in Lindsey's behalf from the Social Security Administration because Lindsey is the child of a deceased wage

earner. This issue will be considered later in a separate section. Also, to avoid duplication, we will discuss additional facts later in this opinion.

## ASSIGNMENTS OF ERROR

Jane claims, restated, that the court (1) erred in its determination of the division of marital and separate property and (2) erred in including Social Security income received by Lindsey on behalf of her deceased mother as part of Kenneth's income for child support calculations.

## STANDARD OF REVIEW

■ In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998); *Priest v. Priest*, 251 Neb. 76, 554 N.W.2d 792 (1996); *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). In a de novo review on the record, an appellate court reappraises the evidence as presented by the record and reaches independent conclusions from those of the trial court. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995). However, if evidence is in conflict, the appellate court may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

■ Child visitation and the amount of child support are matters initially entrusted to the discretion of the trial court, whose decisions are to be reviewed on appeal de novo on the record and will be affirmed absent an abuse of discretion. *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997).

■ With respect to questions of law, an appellate court has an obligation to reach a conclusion independent of the determination made by the court below. *Frey v. Blanket Corp.*, 255 Neb. 100, 582 N.W.2d 336 (1998).

## ANALYSIS

*Property Division.*

A summary of the evidence is necessary before we discuss the trial court's division of property. When the parties were married in October 1989, Jane was working part time as a

salesclerk and attending school on a part-time basis. After the marriage, Jane continued her education and obtained an associate's degree in nursing in May 1994. Jane worked part time on an on-call basis until after the temporary hearing, when she began working full time. Kenneth's occupation as a fire investigator did not change during the marriage.

During the parties' marriage, Kenneth earned approximately $315,774 and Jane earned approximately $67,025. Kenneth seeks to use the disparity in their incomes, the cost of Jane's education, and the payments made on motor vehicles she drove during the marriage as justification for the court's distributing practically all of the marital property to him. The trial court made no findings of fact as to the property brought into the marriage, the value of such property, or the value of the property each of the parties was awarded by the decree. The court did not explain its rationale for the distribution ordered. In addition, the parties seek to buttress their respective positions by mixing items which tend to establish the value and ownership of property with those which tend to establish income and the cost of living or education. Such mixes are not helpful.

We are admonished in Neb. Rev. Stat. § 42-365 (Reissue 1993) that "[w]hile the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately." The statute also provides the court may order alimony and the "division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities . . . ." The statute also provides the court may consider "the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party"; however, this phrase obviously applies only to alimony, which is not an issue in this case.

Furthermore, the Nebraska Supreme Court has stated:

As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the

marital estate, unless it falls within an exception to the general rule. [Citations omitted.] Such exceptions include property accumulated and acquired through gift or inheritance [citation omitted], or property held in trust by a third person [citation omitted]. Property obtained through one or both spouses' employment, however, is not such an exception.

*Davidson v. Davidson*, 254 Neb. 656, 662-63, 578 N.W.2d 848, 855 (1998) (citing *Chrisp v. Chrisp*, 207 Neb. 348, 299 N.W.2d 162 (1980), and *Shomaker v. Shomaker*, 166 Neb. 164, 88 N.W.2d 221 (1958)).

On the basis of the above authority, we do not consider Kenneth's earnings or the expenditures for Jane's education. We realize Jane's earning potential has increased because of the additional education she received during the marriage, but during the same period, Kenneth's income increased from $34,000 to $48,000. As is frequently the case, the yearly rate of income of a sufficiently educated or trained person frequently increases as much as or more than that of a person trying to establish an adequate educational basis. For instance, Jane testified she made over $20,000 per year when she worked as a supervisor before quitting to go to school, but the child support calculation shows her income to be $27,200 at the time of the decree.

The evidence shows that Jane cared for Lindsey and worked in Kenneth's fire-investigation business to a very small degree. Such work does not entitle Jane to an interest in Kenneth's business, but it does illustrate that in every marriage, there is give and take, benefit and detriment, and profit and loss. In family situations, intangibles are frequently held in higher regard than tangibles. Courts have not, and by the nature of things cannot, weigh, compare, and compensate divorcing partners for the benefits they may or may not think they have bestowed on each other. For these reasons, we will not attempt to summarize or weigh these incidental and noneconomic matters.

The parties' principal asset is a home, which was awarded to Kenneth. Each of the parties devotes his or her arguments to attempting to justify his or her view of the correct division of that asset, without considering the overall marital estate and its source. The ultimate test in determining the appropriate-

ness of the division of property is fairness and reasonableness as determined by the facts of each case. *Venter v. Venter*, 249 Neb. 712, 545 N.W.2d 431 (1996). We are convinced it is not possible to judge the reasonableness of a property settlement without determining the amount of property each party brought into the marriage and its value, and the amount of property and its value that each party received pursuant to the decree. The trial court made no such determinations, but we are constrained to do so as part of our de novo review because we believe such treatment is the only way of considering and determining a reasonable distribution of the marital estate. Much of the evidence is not in conflict, but as presented was difficult to organize.

■ Prior to the marriage, Kenneth gave Jane an engagement ring costing $7,262. The evidence shows that Kenneth gave the ring to Jane before marriage and paid for it from his premarital savings. An engagement ring given by a man to his fiance becomes unconditionally the wife's upon marriage, and it is not marital property upon dissolution of that marriage. *Smith v. Smith*, 797 S.W.2d 879 (Mo. App. 1990); *Winer v. Winer*, 241 N.J. Super. 510, 575 A.2d 518 (1990). Therefore, the ring became Jane's at marriage and is her nonmarital property.

■ Jane testified she brought a 1986 Honda automobile into the marriage. During the marriage, this car was destroyed in an accident, and as a result, Jane received $9,000 which she used to purchase an Explorer automobile. When the Explorer was sold, half of the proceeds were used to lease a Mazda and the remaining $3,329 was deposited into an account used to purchase the parties' home. Jane also suffered personal injuries in the automobile accident, and she testified without dispute that the $12,000 she received for those injuries went into the parties' home. Jane seeks to have this sum treated as a contribution by her to the marriage. This court has held that a workers' compensation award is marital property only to the extent it recompenses for the couple's loss of income during the marriage. *Gibson-Voss v. Voss*, 4 Neb. App. 236, 541 N.W.2d 74 (1995). To the extent that the award compensates for loss of premarriage or postdivorce earnings, the award is the injured person's separate property. *Id.* The burden of proof to show the property is nonmarital property is on the person making the claim. *Frost*

*v. Frost*, 227 Neb. 414, 418 N.W.2d 220 (1988). Jane did not introduce enough evidence to establish whether the personal injury recovery was marital or nonmarital property. Accordingly, we consider it as marital property. Therefore, Jane's contribution to the marital property is $3,329, and the only nonmarital property she possesses is the ring.

Kenneth brought an interest in a fire-investigation business into the marriage. There is no evidence that this business significantly increased in value during the marriage or that it was used to accumulate earnings. This interest is clearly Kenneth's nonmarital property. Kenneth valued the car he owned when he married as about equal to the debt against it. In addition, Kenneth brought a home into the marriage, from which $34,703 was realized, and this sum was used to help pay for the parties' home. Kenneth claimed he brought a savings account of $22,994.35 into the marriage but, upon cross-examination, admitted that all but $3,500 was spent before the marriage. Kenneth also held an account with a broker which was later redeemed for $9,600. At the time of the marriage, Kenneth owed approximately $4,500 for his deceased former wife's medical bills. From this evidence, we conclude Kenneth brought $47,803 into the marriage, less $4,500 in debts, for a total of $43,303.

Separate professional real estate appraisals introduced by Jane and Kenneth valued the parties' home at $197,000 and $180,000, respectively. Kenneth testified that, including work he did on it that he valued at $8,000, the house cost $193,646 to build, and while testifying, he stated the house was worth $200,000. Therefore, we value the house at $197,000.

At the time of the hearing, the home was subject to a first mortgage of $107,471.55 and a second mortgage or lien, called a line of credit by the parties, of $10,833. The evidence shows the second mortgage was incurred to finish paying the cost of building the home, although some of that debt may have been incurred for other expenses.

The court awarded each party the personal property in his or her possession and, with the exception of a picture which was awarded to Jane, described only the home and the automobiles. The property is not well identified in the decree, and the court

did not place a value on any asset or debt. To determine the reasonableness of the decree, we interpret the decree to have awarded the property as we show below. As part of our de novo review, we find the value of the assets and the amount of the debts to be as shown in the table below. Information about and the value of items not discussed above but listed in the table appear to be undisputed.

We conclude the trial court awarded the parties' marital assets and debts as follows:

| | | Kenneth | Jane |
|---|---|---|---|
| **Assets** | | | |
| 1994 Suburban | | $ 16,000 | |
| 1994 Mazda (leased) | | | 0 |
| Household goods | | 7,165 | $1,600 |
| Antiques | | | 1,000 |
| Retirement account | | 1,627 | |
| Life insurance | | 4,132 | |
| House value | $197,000 | | |
| 1st mortgage | - 107,471 | | |
| 2d mortgage | - 10,833 | | |
| Net value | $ 78,696 | 78,696 | |
| Total value of assets awarded | | $107,620 | $2,600 |
| **Liabilities** | | | |
| Credit card debts | | 5,220 | |
| Medical bills | | 74 | 165 |
| Net value of property received | | $102,326 | $2,435 |
| Less value of property brought into marriage | | 43,303 | 3,329 |
| Net after allowing for property brought into marriage | | $ 59,023 | - $ 894 |

Combined net value of marital estate is $58,129, or $29,064.50 each if equally distributed.

Jane received practically nothing from the marital estate, and we therefore find that the trial court abused its discretion. In this case, we find no valid reason for distributing more of the marital estate to one party than the other. The parties apparently agree that the home should be distributed to Kenneth. Since

both parties do not dispute the award of the specific assets, our only alternative is to require Kenneth to pay Jane a sufficient amount of money to equalize the property distribution.

<u>Computation of Payment Necessary
to Equalize Distribution</u>

| | |
|---|---|
| Net value of property received by Kenneth | $59,023.00 |
| Amount of equal distribution | - 29,064.50 |
| Amount owed by Kenneth to equalize | $29,958.50 |

In addition, the court ordered Jane to pay $137.50 to reimburse Kenneth for one-half the cost of preparing the parties' 1995 income tax return. Kenneth must pay Jane $29,958.50, less $137.50 if that sum has not been paid.

*Social Security Income.*

By including Lindsey's Social Security benefits as part of Kenneth's income, the trial court in effect finds that such funds are Kenneth's. However, Kenneth merely receives such payments as representative payee for Lindsey. A representative payee has a responsibility to "[u]se the payments he or she receives *only for the use and benefit of the beneficiary* in a manner and for the purposes he or she determines, under the [federal] guidelines . . . to be in the best interests of the beneficiary." (Emphasis supplied.) 20 C.F.R. § 404.2035(a) (1998). Payments to a representative payee are for the use and benefit of the beneficiary if used for the beneficiary's current maintenance, which includes the cost of food, shelter, clothing, medical care, and personal comfort items. 20 C.F.R. § 404.2040(a)(1) (1998).

Furthermore, both Kenneth and Jane are Lindsey's adoptive parents. One has no greater claim on her than the other, and if custody were different, Jane would undoubtedly be entitled to receive the benefit of the Social Security payment. Thus, it is difficult to understand why, in the present situation, Kenneth should receive the benefit of the entitlement and Jane should not. This is particularly true in view of the fact that when Jane adopted Lindsey and agreed to incur the obligation to support her, she undoubtedly was aware of the Social Security benefits that were being paid in Lindsey's behalf. To not take the Social Security payment into consideration would merely give Kenneth a windfall to defray his costs of supporting the child he adopted.

Even if the benefit is treated as his income, the rules for setting child support are based on Neb. Rev. Stat. § 42-364.16 (Cum. Supp. 1996), which provides in significant part:

> Child support shall be established in accordance with [the Nebraska Child Support Guidelines], which guidelines are presumed to be in the best interests of the child, unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order.

The Supreme Court has said: "A judge may not satisfy his duty to act equitably toward all concerned, i.e., the parties and the children, by blindly following suggested guidelines." *Brandt v. Brandt*, 227 Neb. 325, 327, 417 N.W.2d 339, 341 (1988), *overruled on other grounds, Druba v. Druba*, 238 Neb. 279, 470 N.W.2d 176 (1991).

Child support under the guidelines is computed upon the basis of the net monthly income of the parents. A court may deviate from the child support guidelines whenever the application of the guidelines in an individual case would be unjust or inappropriate. Nebraska Child Support Guidelines, paragraph C; *Phelps v. Phelps*, 239 Neb. 618, 477 N.W.2d 552 (1991). See, also, § 42-364.16. After a de novo review of the facts and circumstances of this case, we find strict application of the guidelines will not result in a fair and equitable child support order.

The child support as allowed by the trial court treated the Social Security payment merely as Kenneth's income, which it is not. Without considering the Social Security payments, Jane's total monthly income is $2,267 and Kenneth's is $3,958. Jane's net monthly income is $1,764 and Kenneth's is $3,022, giving the parties a combined net monthly income of $4,786, of which 36.85 percent is Jane's and 63.15 percent is Kenneth's. At these income levels, the guidelines show total support of $1,034. Jane's share would be $381 and Kenneth's would be $653. By adding the Social Security benefits to the combined net income, the total net income of the family is increased to $5,477, and the combined support under the guidelines increases to $1,113, with Jane's net monthly income remaining $1,764 and Kenneth's increasing to $3,713. Using these figures, Jane's income would

be 32.2 percent of the total net monthly income and Kenneth's would be 67.8 percent of the total. Using these figures, Jane's share of the total support of $1,113 would be $358, or $23 less than she would pay if there were no Social Security benefits, and Kenneth's share would be $755. Since Kenneth receives the $691-per-month Social Security benefits to spend on support as he will, his support would effectively be $64.

The difficulty with computing support under the guidelines in the manner it was computed by the court is that the court's computation assumes the Social Security benefits are Kenneth's income, which they are not. It is simply not fair or reasonable to give Kenneth the benefit of the Social Security payments and thus shift most of the burden of supplying the unprovided support to the low-income noncustodial parent. The guidelines can still be used as a reliable guide in setting support if the Social Security benefits are considered as family income but not attributed to either parent, and if they are applied to the support computed under the guidelines for that income, with the balance prorated to the parties on the basis of their real incomes. In this way, the total support is increased in recognition that the family income is greater than the net monthly earnings of the parents, and the parent who has the legal obligation to support Lindsey receives the benefit of the government program intended to pay for the support of the child.

We therefore conclude that it is reasonable to compute the total support obligation as though the money was paid to both parties, and then compute the total support obligation to be $1,113 as above computed. Then, the $691 benefit should be subtracted from that sum, and the balance of $422 should be prorated between the parties in proportion to each's net monthly income. Jane's 36.85 percent of that figure is $155. We therefore conclude the child support obligation of $358 was an abuse of discretion and that the child support should be decreased to $155 per month.

*Health Insurance.*

On our own motion, we note that the court ordered each party, and not the parties jointly, to provide medical insurance for Lindsey. This is an obvious waste. Neb. Rev. Stat. § 42-369(2)

(Reissue 1993) requires the judge to direct which party shall provide health insurance. The record before us does not supply the information necessary for this court to make this determination. Therefore, upon remand, the court shall comply with § 42-369(2), consider if either party has health insurance available, and direct one of the parents to provide health insurance in light of the facts developed at a hearing held for that purpose.

## CONCLUSION

We affirm the judgment of divorce but modify the property settlement to require Kenneth to pay Jane $29,958.50 with interest within 6 months of the date of this decree. Said sum shall draw interest at the judgment rate from the date of the decree, April 9, 1997, until paid. We also modify the decree to provide that Jane shall pay $155 per month child support rather than $358 per month, and we remand the cause for a determination of which parent should provide health insurance and under what conditions.

AFFIRMED IN PART AS MODIFIED, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.